UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:12CR456 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | **OPINION AND ORDER** |
| | ) | |
| CARLOS D. FIGUEROA, | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #19) of Defendant, Carlos D. Figueroa, to Suppress. Upon consideration of the Motion, Response, Exhibits[1], and applicable law, the Court DENIES Defendant's Motion to Suppress without an evidentiary hearing.

**I. BACKGROUND**

Defendant moves for suppression of any and all evidence obtained, either directly or derivatively, of every kind, nature and description, following the search of the residence at

---

[1] Pursuant to Court Order, the Search Warrant/Inventory and Application/Affidavit have been filed under seal.

144 Hall Street, Akron, Ohio on August 29, 2012.  FBI Special Agent Todd D. DeKatch appeared before a District Judge of the Northern District of Ohio, on August 29, 2012, with an Affidavit for Search Warrant.  Special Agent DeKatch sought the Warrant to search the residence of Defendant, Carlos D. Figueroa, at 144 Hall Street, Akron, Ohio, for evidence of the criminal violation of 21 U.S.C. § 841(a)(1) - knowingly and intentionally distributing and possessing with intent to distribute controlled substances, to wit, marijuana and cocaine; and 21 U.S.C. § 846 - conspiracy to distribute and to possess with intent to distribute controlled substances, to wit, marijuana and cocaine.  When the officers executed the Warrant, at approximately 2:44 p.m. on August 29, 2012, they seized three kilograms of cocaine (hidden behind insulation in the basement); three large plastic bins (containing approximately 115 pounds of marijuana); and $28,750.00 in U.S. Currency (in a shoe box in a first floor closet). Subsequently, on September 26, 2012, Defendant was indicted for Possession with Intent to Distribute Cocaine and Marijuana and for Conspiracy to Possess and Distribute Cocaine and Marijuana.

The supporting Affidavit of Special Agent DeKatch is twenty-five pages in length. The introduction details Special Agent DeKatch's experience and training in the investigation of narcotics operations and persons engaged in drug trafficking.  Specifically, DeKatch asserts that, since September of 2011, he has participated with other federal and local agencies in the investigation of Carlos D. Figueroa, for violations of federal narcotics laws.  DeKatch further describes the reliability of three Confidential Sources ("CS-1"; "CS-2"; "CS-3"), who provided information about Figueroa's drug activity.  DeKatch sets out a number of instances, between September and December of 2011, of drug (cocaine) activity between CS-1 and CS-2

and Figueroa. Further, and at a point in time nearer to the Warrant Application:

> CS-3 has provided information to the FBI from June 2012 to the present. CS-3 admitted purchasing cocaine from FIGUEROA for over the past year. CS-3 has purchased cocaine from FIGUEROA at **144 Hall Street, Akron, Ohio**, and knows that FIGUEROA stores drugs at this location.

Affidavit, ¶13.

In ¶33, DeKatch reports that, on August 9, 2012, CS-3 met Figueroa at 144 Hall Street, Akron, Ohio, where he received a two-pound sample of marijuana. DeKatch also summarizes, at ¶34, an August 28, 2012 discussion between CS-3 and Figueroa, at 144 Hall Street, Akron, Ohio, about the recent arrival of a shipment of cocaine.

In his Motion, Defendant argues that Special Agent DeKatch's Affidavit was insufficient because: (1) the information relative to drugs at the premises was stale and insufficient; (2) the information made clear that cocaine was not at the premises; and (3) the information was insufficient to establish Defendant's relationship to 144 Hall Street.

## II. ANALYSIS

When seeking suppression of evidence, "the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir.2003). Defendant Figueroa asserts that the search of the premises violated his Fourth Amendment right to be free from unreasonable search and seizures absent a warrant issued upon probable cause. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Probable cause is "'a probability of a substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983)).  The official issuing the warrant must make "a practical, common-sense decision" as to whether "there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place."  *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991) (internal citations omitted); *Gates*, 462 U.S. at 238.

### **Staleness**

Defendant contends that the information about drugs at 144 Hall Street, Akron, Ohio, is stale.  Whether information is stale depends on the "inherent nature of the crime."  *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir.1998).  "In the context of drug crimes, the Sixth Circuit has recognized that information may go stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'"  *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir.2009).  "However, where there is evidence that a suspect is engaged in an ongoing drug operation, the same presumption does not necessarily apply."  *United States v. Duncan*, No. 3:11-cr-00012-14, 2012 WL 3042945, *5 (M.D.Tenn. July 25, 2012) (citing *United States v. Hammond*, 351 F.3d 765 (6th Cir.2003); *United States v. Greene*, 250 F.3d 471 (6th Cir.2001)).

The Affidavit in this case offers information about Figueroa's cocaine dealings with CS-1 and CS-2 from September through December of 2011.  (Affidavit, ¶¶21-29).  CS-3 provided information about purchasing cocaine from Figueroa over the past year; and that purchases were made and/or drugs were stored at 144 Hall Street, Akron, Ohio.  (Affidavit,

-4-

¶13). In his Motion, Defendant relies upon *Silverman v. United States*, 365 U.S. 505, 511-12 (1961), for the proposition that the privacy of the **home** is at the heart of the Fourth Amendment. In addition, Special Agent DeKatch's Affidavit at ¶39 states: "Summit County Auditor division records indicate that 144 Hall Street is owned by Carlos D. Figueroa."

The Sixth Circuit has determined that evidence of ongoing criminal activity defeats staleness; and the age of information is less important when the place to be searched is the suspect's home, suggesting permanence. *Greene*, 250 F.3d at 481. Therefore, considering the "totality of the circumstances," in the context of Figueroa's continuing activities as detailed throughout the Affidavit, the Court finds that the information relating to drugs on the premises at 144 Hall Street, Akron, Ohio, is not stale.

**Cocaine on the Premises**

Defendant objects to the Affidavit and its lack of evidence that cocaine was on the premises. Defendant acknowledges that conversations took place "at some unspecified location at 144 Hall Street;" but argues that the conversations make clear that Figueroa was only trying to obtain cocaine, and that it was not available at that address.

The Affidavit does illustrate cocaine discussions and/or narcotics transactions between Figueroa and CS-3 on July 12, 2012, July31, 2012, August 9, 2012, and August 28, 2012. According to the Affidavit, Figueroa admits to possessing marijuana, and further admits his efforts to obtain cocaine for CS-3 from his suppliers at the significant price of $35,000.00 per kilogram. In light of these continuing conversations, up to the day before the execution of the Search Warrant, there is "a fair probability that contraband or evidence of a crime [would] be found in [that] particular place," i.e., 144 Hall Street, Akron, Ohio. *United States v. Berry*,

565 F.3d 332, 338 (6th Cir.2009) (quoting *Gates*, 462 U.S. at 236).

**<u>Nexus</u>**

"When a warrant applicant seeks to search a specific location, the affidavit must establish 'a nexus between the place to be searched and the evidence to be sought.'" *Duncan*, No. 3:11-cr-00012-14, 2012 WL 3042945 at *4. "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir.2005).

In the Affidavit, there is evidence of multiple meetings between Defendant and the Confidential Sources at 144 Hall Street, Akron, Ohio — though not inside the dwelling on the property. However, the Summit County public records list Carlos D. Figueroa as the owner of that property. The Sixth Circuit has held that it is "reasonable to search a drug dealer's residence for evidence of drug offenses," "even if there is no direct evidence that actual drug distribution or storage occurred at the residence." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir.2008). Furthermore, the Sixth Circuit has maintained that it is reasonable to infer that evidence of illegal activity will be stored at a drug trafficker's residence. *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir.), cert. denied, – U.S. –, 130 S.Ct. 194, 175 L.Ed.2d 121 (2009); *Williams*, 544 F.3d at 687 (collecting cases holding that an "issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence.").

In view of the totality of the circumstances, and in consideration of the detailed information of Defendant's activities, the Court finds a reasonable nexus between the place to be searched (144 Hall Street) and the evidence sought.

### The "good faith"exception under *United States v. Leon*

Even assuming that the Search Warrant Affidavit lacks probable cause, the Court, nevertheless, must deny Defendant's Motion to Suppress because the law enforcement officials executed the Warrant in good faith.  There is no evidence that the issuing judicial officer was misled by information the affiant knew was false; there is no showing that the issuing judicial officer failed to act in a neutral manner; the Warrant Application was not supported by a mere bare bones affidavit; and the Warrant was not facially deficient in the particularized description of the place to be searched or the things to be seized.  *See United States v. Leon*, 468 U.S. 897, 905 (1984).

### III. CONCLUSION

Based upon the foregoing analysis, the Court finds that the District Judge issued the Warrant based upon a legally sufficient Affidavit, providing a fair probability that evidence of contraband or of criminal activity could be found at Defendant Carlos D. Figueroa's residence, 144 Hall Street, Akron, Ohio.  Therefore, the Motion (ECF DKT #19) of Defendant to Suppress is DENIED without an evidentiary hearing.

**IT IS SO ORDERED.**

                                                s/ Christopher A. Boyko
                                                **CHRISTOPHER A. BOYKO**
                                                **United States District Judge**

**Dated:  January 4, 2013**